1 | David Quinto (State Bar No. 106232)
davidquinto@quinnemanuel.com
2 | Eric D. Winston (State Bar No. 202407)
ericwinston@quinnemanuel.com
3 | Rachel Appleton (State Bar No. 279207)
rachelappleton@quinnemanuel.com
4 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Defendant Quinn, Emanuel,
Urquhart & Sullivan, LLP

8 |

9 | UNITED STATES BANKRUPTCY COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | LOS ANGELES DIVISION

12 |

| | |
|---|---|
| In re<br>PROJECT PLAYLIST, INC., a Delaware Corporation,<br><br>       Debtor. | Chapter 11 (Jointly Administered)<br><br>Case No. 2:10-bk-42927-TD<br>Case No. 2:10-bk-42946-TD<br><br>Adv. Pro. Case No. 2:13-ap-01665-TD |
| In re:<br><br>PLAYLIST, INC.<br>__ Affects Project Playlist, Inc.<br>__ Affects Playlist, Inc.<br>__ Affects both,<br><br>       Debtors. | **QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing<br><br>Date:   October 24, 2013<br>Time:   10:00 a.m. |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PROJECT PLAYLIST, INC. AND PLAYLIST, INC.<br>       Plaintiff,<br><br>       v.<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP, and DOES 1-25, inclusive,<br>       Defendant | Place:  U.S. Bankruptcy Court<br>       Edward R. Royhal Federal Bldg.<br>       255 East Temple Street<br>       Courtroom 1345<br>       Los Angeles, CA 90012<br>Judge:  Hon. Thomas B. Donovan |

13–28 (line numbers)

00811.18542/5546594.2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ......................................................................................................... 6

I.      THE DISMISSAL MOTION IS NOT MOOTED BY THE FAC ................... 6

II.     THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE
        TO AMEND BECAUSE AMENDMENT IS FUTILE. .................................. 7

        A.      The Initial Complaint Fails to Satisfy the Pleading Requirements
                of Rule 8 ........................................................................................... 8

                1.      The Initial Complaint Fails to State a Preference Claim ............. 8

                2.      The Initial Complaint Fails to State a Constructive Fraud
                        Claim ..................................................................................... 12

        B.      The Initial Complaint Fails to Satisfy the Pleading Requirements
                of Rule 9(b) ...................................................................................... 13

        C.      The FAC Cannot Relate Back to the Initial Complaint Because
                The Initial Complaint Does Not Satisfy the Pleading
                Requirements of Rules 8 and 9 ......................................................... 15

III.    THIS COURT CAN AND SHOULD CONSIDER THE TRANSCRIPT
        FROM THE *THINKFILM* PROCEEDING ................................................... 18

CONCLUSION ..................................................................................................... 20

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4
*Alhillo-De Leon v. Gonzales,*
   410 F.3d 1090 (9th Cir. 2005) ............................................................... 16

5

6
*Allstate Ins. Co. v. Countrywide Fin. Corp.,*
   842 F. Supp. 2d 1216 (C.D. Cal. 2012) ................................................. 12

7
*Angell v. Wells Fargo Bank, N.A. (In re Harper),*
   2012 WL 245242 (Bankr. E.D.N.C. 2012) .......................................... 13

8

9
*Baldwin Cty. Welcome Ctr. v. Brown,*
   466 U.S. 147 (1984) ....................................................................... 15, 17

10
*Bankr. Receivables Mgmt. v. Lopez (In re Lopez),*
   274 B.R. 854 (B.A.P. 9th Cir. 2002) .................................................... 17

11

12
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................. 10, 13, 15

13
*Birdsell v. U.S. W. Newvector Grp., Inc (In re Cellular Exp. of Arizona, Inc.),*
   275 B.R. 357 (Bankr. D. Ariz. 2002) .................................... 8, 11, 16, 17

14

15
*Burnett v. N.Y. Cent. R.R. Co.,*
   380 U.S. 424 (1965) ........................................................................... 16

16
*Classic Auto Refinishing, Inc. v. Marino (In re Marino),*
   37 F.3d 1354 (9th Cir. 1994) .......................................................... 16, 18

17

18
*Crescent Res. Litig. Trust v. Nexen Pruet, LLC (In re Crescent Res., LLC),*
   2012 WL 195528 (Bankr. W.D. Tex. 2012) ...................................... 9, 13

19
*Ehrenberg v. Marina District Development Co., et. al. (In re Selim America, Inc.),*
   Adv. No. 2:12-ap-02063-RN [Dkt. No. 6] ........................................... 19

20

21
*Eison v. McCoy,*
   146 F.3d 468 (7th Cir. 1998) ................................................................ 7

22
*Gordon v. City of Oakland,*
   627 F.3d 1092 (9th Cir. 2010) .............................................................. 8

23

24
*Grand Promenade v. Twersky (In re Twersky),*
   190 B.R. 903 (Bankr. C.D. Cal. 1996) ................................................ 16

25
*Gshwend v. Markus (In re Markus),*
   268 B.R. 556 (B.A.P. 9th Cir. 2001), *rev'd in part on other grounds,*
   313 F.3d 1146 (9th Cir. 2002) .............................................. 8, 15, 17, 19

26

27
*Hahn v. Leong (In re Llamas),*
   2011 WL 7637254 (Bankr. C.D. Cal. 2011) ....................................... 15

28

-ii-

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

*Joseph v. Frank (In re Troll Communs., LLC)*,
    385 B.R. 110 (Bankr. D. Del. 2008)..................................................................14

*Lewis v. Lewis*,
    358 F.2d 495 (9th Cir. 1966) ..............................................................................6

*Martinez v. CACH, LLC*,
    2011 WL 2560251 (S.D. Cal. 2011) ..................................................................12

*Oliver v. Cooper (In re Bateman)*,
    2012 WL 3061181 (Bankr. E.D.N.C. 2012) .......................................................13

*O.P.M. Leasing Services v. Weissman*,
    35 B.R. 854 (S.D.N.Y. 1983), *rev'd in part on other grounds*,
    *O.P.M. v. Weissman*, 48 B.R. 824 (S.D.N.Y. 1985) ...........................................14

*In re SCI Real Estate Investments, LLC*,
    2013 WL 1829648 (Bankr. C.D. Cal. 2013) ..........................................12, 14, 15

*Screen Capital Int'l Corp. v. Participant Media, LLC (In re Thinkfilm, LLC)*,
    Adv. Pro. Case. No. 12-02334...................................................................17, 19

*U.S. v. Reiten*,
    313 F.2d 673 (9th Cir. 1963) ...............................................................................7

*Valadez v. Chertoff*,
    656 F.3d 851 (9th Cir. 2011) ............................................................................6, 7

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*,
    288 B.R. 189 (Bankr. D. Del. 2003).............................................................9, 10, 11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...........................................................................15

## **Rules**

Fed. R. Civ. Proc. 8............................................................................7, 8, 10, 12

Fed. R. Civ. Proc. 8(a) .......................................................................................15

Fed. R. Civ. Proc. 9..........................................................................................7, 10

Fed. R. Civ. Proc. 9(b) ..........................................................................13, 14, 15

Fed. R. Civ. Proc. 11............................................................................................5

Fed. R. Civ. Proc. 12(b)(6) .................................................................................10

Fed. R. Civ. Proc. 15(a)(1) ...........................................................................1, 5, 17

Fed. R. Civ. Proc. 15(a)(1)(B) ..........................................................................6, 7

Fed. R. Civ. Proc. 15(a)(2) ...............................................................................1, 2

Fed. R. Civ. Proc. 15(c) ................................................................. 1, 2, 6, 7, 8, 19

Local Bankruptcy Rule 9013-1(g) ....................................................................... 5

Local Bankruptcy Rule 9013-1(g)(1) ................................................................. 5

### Statutes

11 U.S.C. ....................................................................................................... 3

11 U.S.C. § 547 ......................................................................................... 4, 8

-iv-

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

1   Quinn Emanuel Urquhart & Sullivan LLP ("QEUS"), the named defendant in

2   the above-caption adversary proceeding, respectfully submits this Supplement to its

3   Opposition to the "Plaintiff's Supplemental Brief Response to Defendant's Motion

4   to Dismiss" (the "Brief"), filed by the Official Committee of Unsecured Creditors of

5   Project Playlist, Inc. and Playlist, Inc. (the "Committee").

6   ## INTRODUCTION

7      The day before the September 4, 2013 hearing on QEUS's motion to dismiss,

8   this Court posted a tentative ruling granting the motion with prejudice because the

9   first amended complaint was untimely.   This Court was correct – the Committee's

10  effort to excuse its failure to even attempt to properly allege claims prior to the

11  expiration of the statute of limitations, even as extended by a tolling agreement

12  QEUS consented to, is not permitted by Rule 15(a)(2), and the entire adversary

13  proceeding should be dismissed.

14     At the hearing, the Committee stated that because its initial complaint was

15  timely filed under the Tolling Agreement (defined below), under Rule 15(a)(2) the

16  Committee was effectively granted an additional extension of the statute of

17  limitations to file a real complaint.   This Court requested supplemental briefing

18  and, not surprisingly, the Committee's supplemental brief misses the issue and

19  leaves out material facts.[1]

20     The issue before the Court is straightforward – can a plaintiff, on the day the

21  statute of limitations expires, initiate an adversary proceeding by filing a document

22  labeled a complaint (but is far below the *Iqbal/Twombly* standard) so as to

23  effectively extend the statute of limitations to file an amended complaint and cut off

24  any review under Rule 15(c)?   The answer has to be no.   Rule 15(a)(1) does not

---

[1]   As this Court will recall, the Committee failed to even mention in its initial complaint the existence of the Tolling Agreement.   It was QEUS, in the Dismissal Motion, that identified its existence to this Court, so as to make clear that QEUS's argument did not rest on whether the Complaint should have been filed on or before August 6, 2012 (the two-year anniversary of Playlist's petition date) but on the fact that the Complaint fell so far below the *Iqbal/Twombly* standard to be dismissed with prejudice.   *See* Motion to Dismiss at 2 n.2.

1   create an automatic extension of the statute of limitations; the Committee must still

2   satisfy Rule 15(c)'s "relation back" standard, which it has failed to do.

3        The Committee's complaint that initiated this adversary proceeding was

4   fatally deficient.   The Committee purported to allege a preference claim, a

5   constructive fraudulent transfer claim, and an actual fraudulent transfer claim, but

6   all the Committee did was repeat the statutory elements of the claims, which

7   Supreme Court precedent has established is insufficient to survive a motion to

8   dismiss.   The only allegation in that initial complaint unique to QEUS was the

9   allegation that a few days before the bankruptcy filing, debtor Playlist, Inc. paid

10  $50,000 to pay for services QEUS rendered to Playlist's directors.

11       In the case of the preference claim, the Committee alleged no facts that

12  indicated the antecedent debt that had been preferred.   In the case of the

13  constructive fraudulent transfer claim, the Committee alleged zero facts

14  demonstrating that Playlist was insolvent at the time or that it received less than

15  reasonably equivalent for such payments.   For the actual fraudulent transfer claim,

16  the Committee alleged zero facts indicating why Playlist actually intended to hinder,

17  delay, or defraud any creditors when it made the payment to QEUS.

18       The stratagem to file bare-bones complaints to beat the statute of limitations

19  deadline is nothing new for the Committee.   It has filed 12 such complaints.   Each

20  complaint is of identical length and alleges the same three claims.   In other words,

21  not only did QEUS receive a preference, constructive fraudulent transfer, and actual

22  fraudulent transfer, so did Facebook, Inc., Blue Shield of California, and Broadcast

23  Music, Inc., to name a few.   Because the Committee had plenty of time to allege a

24  proper complaint, but chose not to do so, QEUS requested in its Dismissal Motion

25  that the Committee not be permitted to amend to get a "do-over."

26       After QEUS filed its Dismissal Motion, the Committee made no effort to

27  defend what it had filed.   Rather, it responded to the Dismissal Motion by stating

28  that it would file an amended complaint and that, under Rule 15(a)(2), this Court

00811.18542/5546594.2

-2-

1    had no basis to grant the Dismissal Motion; indeed, it argued, as it continues to

2    argue, that the Dismissal Motion is moot, and that QEUS needs to file another

3    motion to dismiss to argue that the amended complaint does not relate back to the

4    initial complaint.    The Committee filed its amended complaint.    It is radically

5    different – one might ask why the Committee did not just file the amended

6    complaint the first time around.[2]

7         At bottom, this Court should not reward the Committee's behavior by

8    excusing the failure to act properly when it filed the initial complaint.    It should

9    dismiss this adversary proceeding by granting the Dismissal Motion.

10    ## **FACTUAL BACKGROUND**[3]

11         On August 6, 2010, Project Playlist, Inc. and Playlist, Inc. ("Playlist") filed a

12    voluntary chapter 11 bankruptcy petitions.    Playlist's estate had until August 6,

13    2012 to bring any avoidance actions.    A short time before the expiration of the

14    August 6, 2012 deadline, the Committee's counsel sent a form demand letter

15    indicating that the Committee would assert preference, constructive fraud, and/or

16    actual fraudulent transfer claims against QEUS and a request to enter into a tolling

17    agreement.    The demand letter provided no specifics concerning the facts

18    underlying such claims.

19         QEUS consented to such Tolling Agreement, but requested that within one

20    month the Committee's counsel provided facts supporting the elements of the

21    asserted claims, aside from insolvency.    *See* Winston Declaration at ¶ 4 and Ex. 2.

22    The Committee's counsel indicated she would.    The parties exchanged e-mails on

23

24        [2]    Attached as Exhibit 1 to the Winston Declaration is a redline comparing the initial complaint to the amended complaint.

25        [3]    QEUS provides this factual background to ensure that this Court has a full record.
26    However, the core facts are not in dispute – there was a Tolling Agreement that expired on July 3, 2013, and thus the Committee had until July 3 to file a complaint asserting avoidance claims
27    against QEUS.    The Committee initiated this adversary proceeding on July 3, 2013.    It filed its amended complaint on August 29, 2013 – after the July 3, 2013 statute of limitations had expired.
28    The only way for the amended complaint to be timely is if it relates back to the "complaint" filed on July 3, 2013.

1  August 6, 2012, which made clear that QEUS was expecting the Committee to

2  provide information within one month.  *See id.*  **These facts are omitted in the**

3  **Committee's supplemental brief and accompanying declaration**.

4       The parties entered into the Tolling Agreement, which tolled the statute of

5  limitations until the earlier of August 6, 2013 or upon 30 days' written notice by

6  either party.  *See* Djang Declaration at Ex. A.   At no time thereafter did the

7  Committee ever provide any information that it had said it would provide.

8       On August 29, 2012, the Committee represented to the Court that it had

9  engaged in an "extensive analysis of potential claims, actions, and claims for relief

10 under sections 510 and 544 through 553 of the Bankruptcy Code."  *See* Joint

11 Motion of the Official Committee of Unsecured Creditors and Debtor Project

12 Playlist, Inc. to Stay Adversary Proceedings, filed August 29, 2012, at 5 [Dkt.

13 No. 304; Bankruptcy Case No. 2:10-bk-42927-TD].

14      On May 17, 2013, the Committee sent QEUS another form letter, reiterating a

15 demand that QEUS pay back $50,000 within 14 days (i.e., May 31, 2013).   This

16 letter made no reference to the existing Tolling Agreement, which had not expired

17 and had a 30-day termination provision, and did not provide any information that the

18 Committee's counsel had promised to give back in August 2012.

19      On May 27, 2013, QEUS responded to the May 17th letter, informing the

20 Committee that it believed the letter violated the Tolling Agreement.   Rather than

21 providing information the QEUS had requested nearly a year earlier, on June 3,

22 2013, the Committee unilaterally terminated the Tolling Agreement on June 3, 2013,

23 making July 3, 2013 the last day for the Committee to file a complaint.  *See* Djang

24 Declaration at Ex. D.   The June 3 letter recognized that QEUS had requested the

25 Committee to provide information, but the letter stated that the requested

26 information related to insolvency, which was presumed under Bankruptcy Code

27 section 547.  *See id.*   That was demonstrably false; as made clear in the August 6,

28 2012 e-mail from QEUS to the Committee's counsel, the information requested was

1  ***everything but insolvency***.   *See* Winston Declaration at Ex. 2 ("We do expect, as

2  we discussed on Friday, to get this month the information, aside from insolvency,

3  that you think relevant to the potential claims identified in the letter.").

4       On July 3, 2013, the day the statute of limitations expired, the Committee

5  filed a bare bones, cookie cutter complaint, which is virtually identical to numerous

6  other complaints filed by the Committee.   Alarmed that the initial complaint's

7  actual fraud claims were unsupported by any factual allegations, QEUS sent the

8  Committee a Rule 11 safe harbor letter, solely with respect to the actual fraud

9  claims, on August 8, 2013.   That same day QEUS filed its motion to dismiss the

10 initial complaint (the "Dismissal Motion").

11      The Committee never responded to the Rule 11 safe harbor letter nor did it

12 substantively respond to the merits of the Dismissal Motion.   Instead, effectively

13 conceding that the initial complaint's allegations were insufficiently pled, the

14 Committee filed a "Response" to the Dismissal Motion that stated its intention to

15 file an amended complaint, which it did on the last day permitted under Rule

16 15(a)(1) to file an amendment to a complaint without first seeking consent or leave

17 of court.   The Committee did so on August 29, 2013 (the "FAC").

18      Before the Committee filed its FAC, in its Reply filed August 28, 2013,

19 QEUS argued that the Committee should not be permitted to file an amended

20 complaint because any amendment itself would be untimely and cannot relate back

21 to the date of the initial complaint.[4]

22

23 _____

24 [4]   The Committee inexplicably argues that the Reply should be disregarded as procedurally and substantively improper.   However, Local Bankruptcy Rule 9013-1(g) expressly permits the moving party to "file and serve a reply memorandum not later than 7 days before the designated

25 date for the hearing."   With the Dismissal Motion still calendared, the Committee's assertion that QEUS should have abandoned its right to file a Reply is unfounded.   The Reply was also

26 substantively proper, having complied with Local Bankruptcy Rule 9013-1(g)(1)'s requirement that the reply memorandum "respond directly to the opposition papers."   Here, the Committee's

27 Response to the Dismissal Motion stated its intent to file an amended complaint, and QEUS

28 responded only to this statement by arguing that the Committee should not be permitted to do so.

1    This Court conducted a hearing on the Dismissal Motion on September 4,

2  2013.   The day before, this Court had posted a tentative ruling, which stated:

3  "Plaintiff's First Amended Complaint is untimely in light of the two-year statute of

4  limitations that ran prior to the filing of the First Amended Complaint.   Under the

5  circumstances, the First Amended Complaint cannot be allowed, for the reasons set

6  forth by Defendant."

7    Though the Committee has alleged that Playlist paid QEUS for services

8  rendered to Playlist's directors, the Committee has declined to sue any of the

9  directors to recover such payments (even though, if the Committee's claims had

10  merit, the challenged payment was for the benefit of such directors, and thus the

11  directors would face liability).

12    **ARGUMENT**

13  **I.    THE DISMISSAL MOTION IS NOT MOOTED BY THE FAC**

14    The Committee argues that the filing of the FAC automatically moots the

15  Dismissal Motion, relying on Rule 15(a)(1)(B)'s prescription that parties may file an

16  amended complaint "as a matter of right" to support its argument that the FAC

17  supersedes the initial complaint.   The Committee's argument mistakenly assumes

18  that Rule 15(a)(1)(B) deprives a court to consider whether an amended complaint

19  filed after expiration of the statute of limitations "relates back" to an initial

20  complaint.   That is not the law.

21    All Rule 15(a)(1)(B) does is permit a plaintiff, one time, to amend a

22  complaint without leave of court or the defendant's consent.   It does not, however,

23  have anything to do with statute of limitations.   Where the statute of limitations has

24  expired prior to the filing of an amended complaint, Rule 15(c) governs a plaintiff's

25  right to amend so that the amended complaint filed after expiration of the statute of

26  limitations is treated as if it was timely filed.   *See Valadez v. Chertoff*, 656

27  F.3d 851, 857-858 (9th Cir. 2011) (acknowledging that "Rule 15(c) is addressed

28  primarily to statute of limitations problems'"); *Lewis v. Lewis,* 358 F.2d 495, 502

1  (9th Cir. 1966) (holding that Rule 15(c) is primarily addressed to statute of

2  limitations problems); *U.S. v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963) (holding

3  that the Rule 15(c) relation back doctrine is primarily addressed to statute of

4  limitations problems.); *Eison v. McCoy,* 146 F.3d 468, 472 (7th Cir. 1998) (there is

5  no need for relation back where amended complaint is still within the applicable

6  statute of limitations).

7       Unlike Rule 15(a)(1)(B), Rule 15(c) does not permit amendment as "a matter

8  of right."   Instead, plaintiffs must demonstrate that an amended complaint ***relates***

9  ***back*** to a timely filed complaint that satisfies the pleading requirements of Rules 8

10  and 9.   Accepting the Committee's argument would mean that the statute of

11  limitations governing a plaintiff's claim is automatically extended in every

12  circumstance by operation of Rule 15(a)(1)(B).

13      None of the cases cited by the Committee address circumstances where the

14  statute of limitations has expired, thereby invoking the requirements of Rule 15(c).

15  Indeed, *Valadez,* a Ninth Circuit case the Committee cites, explicitly states that

16  "Rule 15(c) 'is addressed primarily to statute of limitations problems,' which are not

17  presented by these facts."  656 F.3d at 857-858.   Contrary to the Committee's

18  arguments, the filing of an amended complaint does not automatically render the

19  initial complaint of no legal effect where, like here, the statute of limitations expired

20  prior to its filing.   Therefore, the Committee must, as a threshold matter,

21  demonstrate that the "relation back" requirements of Rule 15(c) are satisfied this

22  Court can accept the FAC as timely filed.

23  **II.   THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO**

24  **AMEND BECAUSE AMENDMENT IS FUTILE.**

25      Because the Committee's initial complaint fell so far below the pleading

26  standards imposed by *Iqbal/Twombly*, it was not a "complaint" that is capable of

27  being amended under Rule 15(c).   Any proposed amendment would not relate back

28

1  to the initial complaint's July 3, 2013 filing date and would therefore be futile.   *See*

2  *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

3  Courts in the Ninth Circuit have articulated a two-part test to determine

4  whether a filing relates back to an earlier filing under Rule 15(c).   *Gshwend v.*

5  *Markus (In re Markus)*, 268 B.R. 556, 560 (B.A.P. 9th Cir. 2001), *rev'd in part on*

6  *other grounds,* 313 F.3d 1146 (9th Cir. 2002); *Birdsell v. U.S. W. Newvector Grp.,*

7  *Inc (In re Cellular Exp. of Arizona, Inc.)*, 275 B.R. 357 (Bankr. D. Ariz. 2002).

8  First, a court asks whether the initially-filed paper is adequate to constitute a

9  "complaint" under Rule 8.   *Markus,* 268 B.R. at 560-61.   If so, it next asks whether

10  the claim asserted in the amendment arises from the same conduct, transaction, or

11  occurrence as the original claim.   *Id.* at 561.

12  As set forth in the Dismissal Motion, even though the initial complaint was in

13  fact filed on the day that the statute of limitations expired (as extended by the

14  Tolling Agreement) that complaint fails the first part of this test.   The Committee's

15  belated attempt to save its initial complaint through the FAC does not satisfy Rule

16  15(c).   As this Court considers the issue, it should ask the obvious question why the

17  Committee left out of the initial complaint all of the factual allegations it now

18  includes in the FAC.   The Committee has no legitimate answer.

19  A.   **The Initial Complaint Fails to Satisfy the Pleading Requirements of**

20  **Rule 8**

21  1.   ***The Initial Complaint Fails to State a Preference Claim***

22  The Committee's first claim asserted in the initial complaint is a claim to

23  avoid the payment to QEUS as a preference under Bankruptcy Code section 547.

24  In the initial complaint, the Committee only alleged the statutory elements; there

25  were no factual allegations to demonstrate, among other things, why the payment to

26  QEUS was on account of antecedent debt or why QEUS would receive more than it

27

28

1 would in a chapter 7 liquidation.[5]   *See Valley Media, Inc. v. Borders, Inc. (In re*

2 *Valley Media, Inc.),* 288 B.R. 189, 192 (Bankr. D. Del. 2003) (holding that the

3 leading test for the adequacy of preferential transfer pleading requires that a

4 complaint allege, in addition to the statutory elements: "(a) an identification of the

5 nature and amount of each antecedent debt and (b) an identification of each alleged

6 preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee

7 and (iv) the amount of the transfer."); *Crescent Res. Litig. Trust v. Nexen Pruet,*

8 *LLC (In re Crescent Res., LLC)*, 2012 WL 195528 , at \*6 (Bankr. W.D. Tex. 2012)

9 (holding that the complaint's allegation that "one or more transfers from [debtor's]

10 Bank of America bank account to Nexsen Pruet via check or wire transfer

11 [occurred] on or within ninety days prior to the petition date" was insufficient to

12 plead a preferential transfer action, because plaintiff did not "sufficiently plead the

13 existence of an antecedent debt.").

14      The Committee attempts to distinguish its initial complaint from the

15 complaints in *Valley Media* and *Cellular Express*.   The Committee relies on *Valley*

16 *Media's* requirement that an "adversary proceeding plaintiff to provide basic factual

17 information concerning the amounts sought to be avoided as preferences."   *Valley*

18 *Media*, 288 B.R. at 193.   The Committee argues that its complaint is distinguishable

19 from *Valley Media* because the complaint in *Valley Media* "only contained a rough

20 estimate of the total amount of preferential transfers."   Brief, at 9.   This is a

21 distinction without merit, since there is *only one* allegation in the initial complaint

22 related to the Committee's preference claim:

23      "Defendant received a transfer of the Debtors' property (the
      "Transfer") before the Debtors filed for bankruptcy that are avoidable
24      as both/either preferential and/or fraudulent under the Bankruptcy Code
      and under the California Civil Code as set forth below. The exact
25

26

27      _____
      [5]   Unlike constructive fraud claims, insolvency is presumed for preference claims, and thus
      the Committee did not need to allege facts to demonstrate insolvency for purposes of the
28      preference claim.

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

1
2

> amount and date of the Transfer is detailed in the 'Schedule of
> Transfer,' attached herein as Exhibit 'A.'"    Compl., at ¶ 10.

3    The remainder of the preference allegations, like those in *Valley Media*, are

4    statutory recitations of the elements which are "insufficient to survive a Rule

5    12(b)(6) motion."    *Valley Media,* 288 B.R. at 192; *Bell Atl. Corp. v. Twombly*

6    550 U.S. 544, 555 (2007) ("formulaic recitation of the elements of a cause of

7    action" are insufficient.).    The Committee's contention that the initial complaint

8    contains more than a "rough estimate" of the total amount of preferential transfers

9    does not cure the initial complaint's failure to state the existence or nature of an

10    antecedent debt, nor does it change that the remaining preference allegations are

11    statutory recitations.

12    Moreover, the Committee seeks to rely on QEUS's statement in the Dismissal

13    Motion that the "payment was made by the Debtor for legal services rendered by

14    Quinn Emanuel to Debtor's board of directors in furtherance of their duties as

15    directors" to support its preference claim.    *See* Committee Supplemental Brief at 8.

16    The Committee cannot rely on a factual statement made by QEUS, which is outside

17    the four corners of the initial complaint, to cure the initial complaint's deficiencies.

18    And, in any event, for purposes of the Dismissal Motion it is black letter law that

19    QEUS had to assume the truth of the facts alleged in the initial complaint, just as

20    this Court must assume the truth of the factual allegations in the initial complaint.

21    Moreover, the Committee's assertion that "defendant cannot credibly argue

22    that it did not understand "the nature the nature, amount, or date of the Transfer, or

23    whether the Transfer was in money or other property" because "those facts were

24    included in the initial complaint" misses the point of the Federal Rules' pleading

25    requirements.    Committee Supplemental Brief at 10.    If plaintiffs were permitted to

26    rely on what they subjectively believe defendants understood, the pleading

27    requirements of Rules 8 and 9 would be rendered meaningless.    Instead, the Court

28    must assess the Committee's singular preference allegation, which does not provide

1  any information describing the nature of the transfer or whether the transfer was in

2  money or property.

3       The Committee argues that *Cellular Express* is distinguishable because it

4  involved claims against five defendants that "failed to allege the nature of any such

5  transfers, whether the transfers were in money or other property, the dates of any

6  such transfers, or the amounts of any such transfers."   *See* Committee Supplemental

7  Brief at 9-10.   While the Committee cites this in support of its position, the initial

8  complaint, like *Cellular Express*, also fails to allege the nature of the transfer and

9  whether the transfers were in money or other property.   *Cellular Express* goes on to

10 say that, "at minimum there must be some description of the *types* of transfers

11 sought to be avoided, such as transfers by cash or check, transfers of real or personal

12 property, transfers by covering an employee's personal obligations, transfers by a

13 release of obligations owed to the debtor, indirect *DePrizio*-type transfers, transfer

14 by a leveraged buyout, etc. Without at least some specification of the kinds of

15 transactions the plaintiff seeks to avoid, defendants may not really have any notice

16 of the 'particular transaction or set of facts' for which they must answer, and may be

17 incapable of identifying applicable affirmative defenses."   *Cellular Express*, 275

18 B.R. at 363.   Again, the initial complaint cannot be saved by Committee's

19 contention that QEUS must have understood the nature of the transfer.

20      The Committee also rehashes its argument that leave to amend should be

21 granted because leave to amend was granted in *Valley Media*.   Unlike *Valley

22 Media*, leave to amend is inappropriate here because the statute of limitations has

23 now expired, rendering any amendment futile.   *See Valley Media,* 288 B.R. at 193

24 ("[a] denial of leave to amend is justified if there is undue delay, bad faith, a dilatory

25 motive, prejudice or futility.").

26

27

28

00811.18542/5546594.2

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

2.    ***The Initial Complaint Fails to State a Constructive Fraud***
***Claim***

The Committee's Brief completely omits discussion of its constructive fraud claim, instead focusing its Rule 8 arguments on the Committee's preference allegations. Despite the Committee's oversight, this allegation should not be ignored and requires dismissal.   To plead a constructive fraudulent transfer claim, the complaint needs to allege, at a minimum, "sufficient facts to plausibly show that on the date of the transfer the Debtors were actually insolvent or received less than was given to the Defendants."   *In re SCI Real Estate Investments, LLC,* 2013 WL 1829648, at *6 (Bankr. C.D. Cal. 2013)*; Allstate Ins. Co. v. Countrywide Fin. Corp.,* 842 F.Supp.2d 1216, 1226 (C.D. Cal. 2012).   Instead, the initial complaint nakedly asserts each element of a constructive fraudulent transfer devoid of further factual content.

First, as to the transfer itself, the initial complaint merely alleges that "Defendant filed an arbitration against one or more of the Debtors' officers and/or directors for recovery of the account balance, and Defendant asserted during the arbitration and prevailed on the theory that it performed services on behalf of the individual officers and/or directors of the Debtors, but not on behalf of the Debtors." *See* Compl., at ¶ 35.   Standing alone, this allegation does nothing to bolster the Committee's constructive fraudulent transfer claim because the complaint fails to allege any facts showing that services provided a corporate debtor's directors do not provide reasonably equivalent value to the corporate debtor.   *See Martinez v. CACH, LLC,* 2011 WL 2560251, at *6 (S.D. Cal. 2011) (finding following allegation insufficient: "CACH does not receive reasonably equivalent value of assets transferred to parent SQUARETWO for the liabilities CACH has incurred in exchange for such transfer of assets.").

Second, the initial complaint contains no facts plausibly supporting the allegation that Debtors were somehow insolvent at the time of the transfers.   Unlike

1   a preference claim, a complaint asserting a constructive fraud claim does not benefit

2   from any presumption of insolvency.   "[I]n order to plead sufficient facts in regard

3   to the essential element of insolvency, the Trustee must plead facts showing the

4   Debtor's actual assets and liabilities on or about [the date of the transaction]."

5   *Oliver v. Cooper (In re Bateman)*, 2012 WL 3061181, at *4 (Bankr. E.D.N.C.

6   2012); *Angell v. Wells Fargo Bank, N.A. (In re Harper)*, 2012 WL 245242, at *6

7   (Bankr. E.D.N.C. 2012) (finding allegation that "as evidenced by the Debtors'

8   schedules…Debtor was insolvent on the date the Trustee's Deed was recorded or

9   became insolvent as a result of the Trustee's Deed" insufficient as a "formulaic

10   recitation of the elements of § 548(a)(1)(B)"); *Crescent Res. Litig. Trust,* 2012 WL

11   195528 , at *2 (holding that insolvency alleged insufficiently where plaintiff failed

12   to attach schedules and other financial documents that allegedly showed insolvency

13   and failed to refer to any specific facts in the documents permitting an inference of

14   insolvency).   Instead, the initial complaint simply parrots the statutory definition

15   from Bankruptcy Code section 548(a)(1)(B)(ii).   *See* Compl., at ¶¶ 36 & 42.   This

16   "formulaic recitation of the elements of a cause of action" is insufficient.   *Twombly,*

17   550 U.S. at 555, and therefore the constructive claim must be dismissed.

18   **B.**   **The Initial Complaint Fails to Satisfy the Pleading Requirements of**

19   **Rule 9(b)**

20   The Committee also has alleged an actual fraud claim against QEUS.   The

21   allegations in the initial complaint fall well below even pleading requirements the

22   "less stringent" requirements of Rule 9(b) advocated by the Committee.   Contrary

23   to the Committee's assertion, QEUS does not seek the application of an

24   inappropriately stringent pleading standard to initial complaint; rather, QEUS

25   merely requests that the Committee be held to the same standard that trustees and

26   committees are routinely held to in other cases.   Indeed, in this case, where the

27   Committee affirmatively represented in August 2012 that it had undertaken an

28

-13-

1    extensive analysis of avoidance actions,[6] and had nearly a year after signing a

2    Tolling Agreement to further investigate, the Committee has no cause to complain it

3    somehow lacks access to information.[7]

4         While the Committee provides no legal analysis demonstrating how the Court

5    should apply this relaxed pleading standard and simply concludes that the initial

6    complaint's allegations are satisfactory, the cases cited by the Committee

7    demonstrate just the opposite.   For example, in *O.P.M. Leasing Services v.*

8    *Weissman*, the court qualified its finding that a complaint, failing to specify over one

9    hundred and fifty transactions that took place over a six year period, satisfied Rule

10   9(b) by noting that "if only one fraudulent act were relied on, more details as to time

11   and place would be appropriate."   35 B.R. 854, 862 (S.D.N.Y. 1983), *rev d in part*

12   *on other grounds, O.P.M. v. Weissman,* 48 B.R. 824, (S.D.N.Y. 1985).   Indeed, the

13   court in *In re Troll Communs.,* found that a complaint satisfied the requirements of

14   Rule 9(b) where it contained "nearly fifty paragraphs of factual allegations

15   describing the circumstances surrounding the transfers."   *Joseph v. Frank (In re*

16   *Troll Communs., LLC),* 385 B.R. 110, 124-125 (Bankr. D. Del. 2008).   The

17   Committee cannot point to ***any*** factual allegations supporting its actual fraud claims,

18   much less fifty.

19        Likewise, the cases QEUS cites in its Dismissal Motion are instructive as to

20   how Rule 9(b)'s pleading standard is applied to trustees and committees.   In *SCI*

21   *Real Estate*, Bankruptcy Judge Peter Carroll of this Court held that the liquidation

22   trustee's actual fraudulent transfer allegations failed in part because the complaint

23   "set forth [few] facts from which an inference of scienter [could] be drawn," as

24   _____

25   ⁶  *See* Joint Motion of the Official Committee of Unsecured Creditors and Debtor Project
     Playlist, Inc. to Stay Adversary Proceedings, filed August 29, 2012, at 5 [Dkt. No. 304;

26   Bankruptcy Case No. 2:10-bk-42927-TD].
     ⁷  The Committee's FAC quotes e-mail exchanges, without attaching such documents.   The

27   Committee does not explain when it obtained such documents, but the only reasonable inference is
     that the Committee had such information *before* it filed the initial Complaint, but apparently chose

28   not to make any reference to such documents when it filed the initial Complaint.

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

1  "[e]ach of the allegations…[was] a legal conclusion 'which may not [be]

2  substitute[d] for well-pleaded facts allowing the Court to reasonably infer that those

3  conclusions are true.'"    2013 WL 1829648, *6 (Bankr. C.D. Cal. 2013).    *Hahn v.*

4  *Leong (In re Llamas)*, 2011 WL 7637254, at *7 (Bankr. C.D. Cal. 2011).

5      The initial complaint does not meet any of these requirements – it does not

6  allege any of the traditional badges of fraud, nor does it allege the "the who, what,

7  when, where, and how of the misconduct charged."    *Vess v. Ciba-Geigy Corp. USA,*

8  317 F.3d 1097, 1106 (9th Cir. 2003).    The Committee claims that paragraphs 16,

9  23, 29, 34, 35 36, 40, 41, 42 of the initial complaint constitute "factual allegations,"

10  which taken together with 'the Committee's Exhibit A, support its actual fraud

11  claim.

12      Yet, there are no factual allegations to be found in these paragraphs.    Instead,

13  these paragraphs are statutory recitations of the Bankruptcy Code.    These

14  paragraphs cannot be converted into factual allegations simply at the Committee's

15  insistence.    These are precisely the type of legal conclusions that Judge Carroll held

16  were insufficiently pled by the trustee in *SCI Investments*.    *See Twombly,* 550 U.S.

17  at 555 ("formulaic recitation of the elements of a cause of action" is insufficient to

18  plead a cause of action.).    Therefore, even the under the pleading standard

19  applicable to trustees and committees, the initial complaint still fails to satisfy Rule

20  9(b).

21      **C.**    **The FAC Cannot Relate Back to the Initial Complaint Because The**

22          **Initial Complaint Does Not Satisfy the Pleading Requirements of**

23          **Rules 8 and 9**

24      Where an earlier pleading fails to "substantially comply with Rule 8(a)" and

25  thus does not constitute a complaint, there is "nothing to which an amended

26  complaint can relate back."    *Markus,* 313 F.3d at 1151 (denying relation back in

27  fraudulent transfer case); *see also Baldwin Cty. Welcome Ctr. v. Brown,* 466 U.S.

28  147, 149 n. 3 (1984) (holding plaintiff's prior claims could not be a basis for relation

1  back because it did not "give the defendant fair notice of what plaintiff's claim is

2  and the grounds upon which it rests").   "[T]he policy of construing pleadings

3  liberally does not justify the conclusion that any document filed in a court giving

4  some notice of a claim satisfies the requirements of the Federal Rules."  *See Grand*

5  *Promenade v. Twersky (In re Twersky)*, 190 B.R. 903, 907 (Bankr. C.D. Cal. 1996)

6  (citing *Classic Auto Refinishing, Inc. v. Marino (In re Marino),* 37 F.3d 1354, 1357

7  (9th Cir. 1994) (affirming denial of relation back).

8      And for good reason: statutes of limitations are not mere formalities, as "the

9  right to be free of stale claims in time comes to prevail over the right to prosecute

10  them."  *Alhillo-De Leon v. Gonzales,* 410 F.3d 1090, 1095 (9th Cir. 2005) (quoting

11  *Burnett v. N.Y. Cent. R.R. Co.,* 380 U.S. 424, 428 (1965)). Such time limits "assure

12  fairness to defendants" and serve the important purpose of promptly informing

13  defendants of any claims. *Id.*   Indeed, the Bankruptcy Court for the District of

14  Arizona rejected, on these exact grounds, an attempt to amend a near-identical

15  complaint. *See Cellular Express,* 275 B.R. 357 (Bankr. D. Ariz. 2002).

16      In *Cellular Express,* the trustee filed his original adversary complaint two

17  days before expiration of the two-year statute of limitations.   *Id.* at 359.

18  Suggesting that "a good test for the adequacy of the notice given by a complaint is

19  to ask whether the defendant could respond to it with an appropriate affirmative

20  defense," the court insisted that an initial complaint "at a minimum" include "some

21  description of the *types* of transfers sought to be avoided, such as transfers by cash

22  or check, ... transfer by a leveraged buyout, etc."   *Id*. at 363 (emphasis in original).

23  The court held that the trustee's amended complaint was therefore time-barred.

24      Here, as in *Cellular Express,* the initial complaint lacks any description of the

25  transfers at issue, leaving QEUS unable to substantively respond or formulate any

26  affirmative defenses.   Because any amendment of the initial complaint would not

27  relate back to the unsupported and legally insufficient complaint, and because the

28

00811.18542/5546594.2

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

1  relevant statute of limitations had run prior to the filing of the FAC, giving the

2  Committee leave to amend the initial complaint would be futile.

3        This is the same conclusion reached by Bankruptcy Judge Russell earlier this

4  year in the *Thinkfilm* bankruptcy case.   Like the Committee here, the plaintiffs in

5  *Thinkfilm* filed on the last possible day a bare bones complaint alleging avoidance

6  actions.   *See Screen Capital Int'l Corp. v. Participant Media, LLC (In re*

7  *Thinkfilm, LLC),* Adv. Pro. Case. No. 12-02334.   The defendant filed a motion to

8  dismiss and further requested that the plaintiff not be permitted leave to amend.

9  The plaintiff argued that it intended to amend the complaint and that Rule 15(a)(1)

10  permitted such an amendment. *See* Feb. 5, 2013 Tr. at 19. 1.   Judge Russell granted

11  the motion to dismiss with prejudice, stating: "[a]nd as far as I understand the law –

12  and maybe a higher court will tell me one way or the other, but it seems to be not

13  consistent with the – as I understand the law – to relate back. There's nothing to

14  relate back to."   *Id.* at 22.

15        The Committee, in an attempt to salvage its ability to amend the initial

16  complaint, argues that *Markus*, *Cellular Express,* and *Thinkfilm* are distinguishable

17  from this case, focusing on immaterial differences that do not change the outcome

18  for the Committee.   First, the Committee argues that *Markus* is distinguishable

19  because there the plaintiff was attempting to relate back to an untimely-filed motion

20  to convert, not a complaint.   This misses the point.   "A pleading ... is to be judged

21  by its substance rather than by its form or label."   *Bankr. Receivables Mgmt. v.*

22  *Lopez (In re Lopez)*, 274 B.R. 854, 862 (B.A.P. 9th Cir. 2002); *see also Cellular*

23  *Express*, 275 B.R. at 363-64 (denying relation back where earlier deficient pleading

24  captioned "Complaint").   Thus, the primary deficiency in the *Markus* "complaint"

25  was not that it was filed as a motion.   Rather, it was that, like the Committee's

26  Complaint, it lacked the relevant factual allegations of a complaint.   *See Baldwin*

27  *City Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n. 3 (1984); *Markus*,

28

1   313 F.3d at 1149-50; *Classic Auto Refinishing, Inc. v. Marino (In re Marino)*, 37

2   F.3d 1354, 1356-57 (9th Cir. 1994).

3         Second, the Committee argues that *Cellular Express* is distinguishable

4   because it applies only "where there are absolutely no adequately identified

5   transactions in the original complaint." *See* Brief, at 7.   Here, as in *Cellular*

6   *Express*, there are no adequately identified transactions in the initial complaint.

7   Oddly, however, the Committee asserts that this holding somehow bolsters its claim,

8   when in fact it supports QEUS's position.   The Committee refers to Exhibit A of

9   the initial complaint, as well as paragraphs 34, 35, 40, and 41 as evidence that the

10  initial complaint contains sufficient factual support, neglecting to mention that

11  paragraphs 34 and 40, and 35 and 41, are identical in substance.   Thus, including

12  Exhibit A, there are only three unique paragraphs of factual allegations, none of

13  which adequately identify any transactions.

14        Finally, the distinctions the Committee draws between this matter and

15  *Thinkfilm* are likewise immaterial.   The Committee argues that its initial complaint

16  contains significantly more factual allegations than the complaint in *Thinkfilm*

17  because the *Thinkfilm* complaint only contained two paragraphs of factual matter

18  and was filed against two defendants.   This argument is without merit since the

19  initial complaint contains only three paragraphs of unique factual matter (and such

20  unique factual matter does provide factual support for all of the required elements).

21  It is unclear how this makes the initial complaint superior to the complaint in

22  *Thinkfilm*, nor is it clear how the additional defendant in *Thinkfilm* changes the

23  result here.

24  **III.   THIS COURT CAN AND SHOULD CONSIDER THE TRANSCRIPT**

25        **FROM THE *THINKFILM* PROCEEDING**

26        The Committee argues that this Court may not consider Judge Russell's ruling

27  in the *Thinkfilm* case.   The Committee's apparent view is that one judge of a

28

-18-

QUINN EMANUEL'S OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

1  bankruptcy court should not consider the legal analysis and conclusions of another
2  judge of the same court.   That is wrong.

3      Judge Barry Russell entered an order in the *Thinkfilm* matter granting
4  defendant's motion to dismiss "for the reasons set forth in the moving and reply
5  papers and at the hearing." *See* Order Granting Defendant Participant Media, LLC's
6  Motion to Dismiss with Prejudice, entered February 15, 2013, Adv. Pro. Case.
7  No. 12-02334 [Dkt. No. 18].   Thus the *Thinkfilm* hearing transcript is incorporated
8  into the entered order and necessary for its interpretation.   Furthermore, the
9  *Thinkfilm* order and transcript represent an instructive legal ruling from the district
10 in which this matter is pending.   This is not factual evidence, but legal authority to
11 which the appropriate weight can be accorded.   QEUS is not seeking to admit the
12 *Thinkfilm* into evidence, but providing this Court persuasive authority from another
13 judge in this district on a substantially similar matter.

14     Thus, the Committee's argument that Mr. Winston must have "personal
15 knowledge" of the *Thinkfilm* proceedings in order for this Court to consider the
16 transcript as evidence is without merit.   QEUS is not seeking to introduce the
17 transcript as evidence.   Mr. Winston's declaration was merely to authenticate the
18 transcript as a true and correct copy of the transcript, since it is not available on
19 Westlaw or LEXIS.   The Committee's argument seems to be that transcripts of
20 public hearings before the Bankruptcy Court, transcribed on behalf of the United
21 States government, are somehow not trustworthy.   This argument defies common
22 sense.

23     Finally, the *Selim* case formerly pending before Judge Neiter, like so many of
24 the cases cited by the Committee, does not discuss the implications of Rule 15(c)
25 and *Markus*.   This is because the statute of limitations expired in *Selim* because
26 **Defendant** requested a last minute extension of time to respond to the initial
27 complaint, thereby extending the briefing schedule past the expiration of the
28 limitations period.   *See Ehrenberg v. Marina District Development Co., et. al. (In*

00811.18542/5546594.2

-19-

1 | *re Selim America, Inc.)*, Adv. No. 2:12-ap-02063-RN [Dkt. No. 6].   Here, however,

2 | the Committee requested that QEUS enter into the Tolling Agreement to extend the

3 | ***Committee's*** time to file the initial complaint.   Thus, unlike the plaintiff in *Selim*,

4 | the Committee is not prejudiced by QEUS's conduct, but is instead the party

5 | responsible for the delay.   Thus, Judge Neiter's ruling in *Selim* addresses

6 | circumstances drastically different from this case and therefore does not impact the

7 | outcome of this matter

8 | ## <u>CONCLUSION</u>

9 |      For the reasons set forth above and in QEUS's Dismissal Motion and Reply,

10 | the Committee's initial complaint must be dismissed with prejudice.

13 | DATED: October 2, 2013          QUINN EMANUEL URQUHART &
14 |                                 SULLIVAN, LLP

16 |                                 By     */s/ Eric D. Winston*

18 |                                    David Quinto (State Bar No. 106232)
   |                                    davidquinto@quinnemanuel.com
19 |                                    Eric D. Winston (State Bar No. 202407)
   |                                    ericwinston@quinnemanuel.com
20 |                                    Rachel Appleton (State Bar No. 279207)
   |                                    rachelappleton@quinnemanuel.com

21 |                                    Attorneys for Defendant Quinn, Emanuel,
22 |                                    Urquhart & Sullivan, LLP