1  Roger F. Friedman (State Bar No. 186070)
   rfriedman@rutan.com
2  Caroline R. Djang (State Bar No. 216313)
   cdjang@rutan.com
3  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Fourteenth Floor
4  Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
5  Facsimile:   714-546-9035

6  Attorneys for the
   Official Committee of Unsecured Creditors of
7  Project Playlist, Inc. and Playlist, Inc.

8  UNITED STATES BANKRUPTCY COURT

9  CENTRAL DISTRICT OF CALIFORNIA

10  LOS ANGELES DIVISION

| 11 | In re: | Chapter 11 (Jointly Administered) |
|---|---|---|
| 12 | PROJECT PLAYLIST, INC., a Delaware Corporation, | Case No. 2:10-bk-42927-TD |
| 13 | | Case No. 2:10-bk-42946-TD |
| 14 | In re: | Adversary No. 2:13-ap-01665 |
| 15 | PLAYLIST, INC. | **PLAINTIFF'S REPLY TO QUINN EMANUEL'S OPPOSITION TO** |
| 16 | __ Affects Project Playlist, Inc. | **SUPPLEMENTAL BRIEF IN RESPONSE** |
| 17 | __ Affects Playlist, Inc.<br>_x_ Affects both, | **TO DEFENDANT'S MOTION TO DISMISS** |
| 18 | Debtors. | **Hearing**<br>Date:  October 24, 2013 |
| 19 | | Time: 10:00 a.m.<br>Place: U.S. Bankruptcy Court |
| 20 | OFFICIAL COMMITTEE OF<br>UNSECURED CREDITORS OF | Edward R. Roybal Federal Bldg.<br>255 East Temple Street |
| 21 | PROJECT PLAYLIST, INC. AND<br>PLAYLIST, INC. | Courtroom 1345<br>Los Angeles, CA 90012 |
| 22 | Plaintiff, | |
| 23 | v. | |
| 24 | QUINN EMANUEL URQUHART & SULLIVAN, LLP, and DOES 1-25, | |
| 25 | inclusive, | |
| 26 | Defendants. | |
| 27 | | |
| 28 | | |

Rutan & Tucker, LLP
attorneys at law

2562/028512-0010
6226527.3 a10/09/13

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................1

II.  THE FAC RELATES BACK TO THE INITIAL COMPLAINT
     PURSUANT TO RULE 15(C) ..............................................................................3

III. CASE LAW FAVORS RELATION BACK ............................................................7

IV.  DEFENDANT APPLIES THE INCORRECT STANDARD ...............................9

V.   CONCLUSION ..................................................................................................11

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (U.S. 2007)..................................................................................................3

*Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Ariz., Inc.)*,
  275 B.R. 357 (Bankr. D. Ariz. 2002)..........................................................................8-10

*Gordon v. City of Oakland*,
  627 F.3d 1092 (9th Cir. 2010)..........................................................................................7

*Valley Media v. Borders (In re Valley Media)*,
  288 B.R. 189 (Bankr. D. Del. 2003) ................................................................................8


**RULES**

Federal Rules of Bankruptcy Procedure
  rule 7015............................................................................................................................2

Federal Rules of Civil Procedure
  rule 12(b)(6) ................................................................................................................9. 10
  rule 15(c)........................................................................................................................2, 4

Local Bankruptcy Rules
  rule 9013-2(b)....................................................................................................................8

Plaintiff, the Official Committee of Unsecured Creditors of Project Playlist, Inc. and Playlist, Inc. ("Committee"), respectfully submits this reply to Quinn Emanuel Urquhart & Sullivan, LLP's ("Defendant") opposition to the Committee's supplemental brief ("Opposition") regarding the Motion to Dismiss ("Motion") filed by Defendant.

## I. INTRODUCTION

Defendant apparently has lost sight of the only issue currently in dispute, which is whether the initial Complaint filed by the Committee against Defendant on July 3, 2013 ("Initial Complaint") was sufficient to qualify as a "real" complaint under Rule 8. Defendant already has admitted in open court and in writing that the Committee timely filed its Initial Complaint under the terms of a Tolling Agreement.[1] Defendant also admits that a plaintiff has a right to amend a complaint once as a matter of course under Rule 15(a)(1)(B). Defendant argues, however, that the Committee's Initial Complaint was insufficient to qualify as a "real" complaint, and thus, according to Defendant, the Committee may not file an amended complaint, because there is no "real" complaint to which an amended complaint may relate back. Defendant spends the majority of its lengthy supplemental brief either (i) discussing immaterial issues, such as the Committee's alleged failure to provide information to the Defendant – information that the Committee had no reason or obligation to provide to the Defendant; or (ii) attempting to convince the Court to adopt its prior tentative ruling, which the Court stated on the record it would withdraw due to the existence of the Tolling Agreement. Neither of Defendant's approaches is instructive as to whether the Initial Complaint was indeed a real complaint. The Initial Complaint was indeed a real complaint, because it contained "a short and plain statement of the claim," as required by Rule 8. For the reasons set forth herein and in the Committee's supplemental brief, it is clear that the Initial Complaint complies with Rule 8, and that Defendant's Motion should be denied.

In addition, Defendant asserts that the Committee has not satisfied the "relation

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Committee's Supplemental Brief.

-1-

back" standard set forth in Rule 15(c), but does not explain why.  Unquestionably, the Committee's First Amended Complaint ("<u>FAC</u>"), filed as a matter of right pursuant to FED.R.CIV.P. 15(a)(1)(B),[2] "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." (FED.R.CIV.P. 15(c).)  Oddly, Defendant mentions this standard in its Opposition, but never actually discusses how the Committee purportedly has fallen short of the standard. Clearly, the differences between the Initial Complaint and the FAC, as pointed out by the redline filed as an exhibit to Defendant's counsel's declaration, all arise out of the same conduct, transaction, and occurrence set forth in the Initial Complaint.  Each of the additional allegations in the FAC relate back to the allegations in the Initial Complaint that the $50,000 payment on August 4, 2010 to Defendant ("<u>Transfer</u>") from Playlist, Inc. ("<u>Playlist</u>") was in payment of legal services rendered by Defendant to Playlist's individual board members.  (*See* Motion, 1, ln. 10-12).  There are not any new parties, transactions, conduct, occurrences, or claims alleged in the FAC.  Rather, the FAC supplements allegations and claims for relief previously alleged in the Initial Complaint.  Thus, the FAC indisputably relates back to the timely-filed Initial Complaint, and therefore is timely.

Additionally, Defendant's pervasive references to the "*Iqbal/Twombly* standard" and "Supreme Court precedent," throughout Opposition, also miss the point.  Dismissal under *Iqbal/Twombly* of the operative complaint in this adversary proceeding (*i.e.*, the FAC) is not what the Defendant is urging the Court to do.  Rather, Defendant asks this Court for a much more drastic remedy, which is to rule that the Initial Complaint – already superseded by the FAC – is simply a piece of paper filed with the Court that does not even *qualify* as a complaint.  This is not the result contemplated by *Iqbal* and *Twombly* or any other "Supreme Court precedent."  To completely foreclose the Committee from bringing its claims for relief before this Court based on the alleged insufficiency of a *superseded* timely complaint would be an overly harsh and inequitable result, and thus, the relief

---

[2]  Incorporated and made applicable to this adversary proceeding pursuant to FED.R.BANKR.P. 7015.

sought by the Defendant should be denied.[3]

## II. THE FAC RELATES BACK TO THE INITIAL COMPLAINT PURSUANT TO RULE 15(C)

Defendant asserts in its Opposition that "the Committee must, as a threshold matter, demonstrate that the 'relation back' requirements of Rule 15(c) are satisfied [sic] this Court can accept the FAC as timely filed." (Opposition at 7, ln. 20-22.) Defendant then abruptly ends the discussion, and fails to even address whether the Committee's FAC satisfies Rule 15(c) – which it does.  Instead, Defendant attempts to deflect the discussion to the self-styled "obvious question why the Committee left out of the initial complaint all of the factual allegations it now includes in the FAC." (Opposition at 8, ln. 16-18).

While this question does not require an answer, the answer is not as nefarious as Defendant suggests.  First, *Iqbal* and *Twombly* did not change the liberal "notice pleading" standard under the federal rules. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 575 (U.S. 2007) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.")  Second, most, if not all, of the evidence that the Committee relied upon in formulating its Initial Complaint came from correspondence between Defendant and its former clients, *i.e.*, the individual officers and directors of Playlist.  Because of the notice pleading standard, the Committee did not feel it necessary to quote those pieces of correspondence; however, because Defendant's Motion asserts that the Initial Complaint lacked detail, the Committee filed the FAC in response, and included numerous statements and admissions by Defendant in support of the claims for relief in the FAC.[4]

---

[3] Defendant readily concedes in its Opposition that "the core facts are not in dispute" (Opposition at 3, fn. 3).  As such, the Committee will not waste the Court's time by responding to Defendant's "Factual Background" section.  To the extent that the Court has questions regarding any of the purported "facts" stated in the Opposition, the Committee will address any such questions at the hearing on October 24, 2013.

[4] The Committee has not, as Defendant incorrectly argues, "effectively conced[ed] that the initial complaint's allegations were insufficiently pled." (Opposition at 5, ln. 12-13.) Rather, the Committee, whose counsel is paid by the estate, must make economic decisions, and the Committee simply opted to file the FAC in lieu of expending the fees required to oppose the Motion.

Defendant fails to address whether the FAC "arises from the same conduct, transaction, or occurrence as the original claim" because Defendant's argument on this point does not withstand scrutiny. Rule 15(c) is satisfied in this case, because each and every new allegation in the FAC relates to the same conduct, transaction and occurrence as the Initial Complaint. As set forth in previous briefs, Playlist made the Transfer to Defendant in payment of a debt for which Playlist's individual officers and directors were liable, and not a debt for which Playlist was liable. Paragraphs 34 and 40 of the Initial Complaint allege:

"Plaintiff is informed and believes that by the Transfer, the Debtors paid a debt for which the Debtors' officers and/or directors were liable, but not a debt for which the Debtors were liable."

Paragraphs 35 and 41 of the Initial Complaint allege:

"Plaintiff is further informed and believes that after Debtors made the Transfer to Defendant, an account balance remained. Plaintiff also is informed and believes that Defendant filed an arbitration against one or more of the Debtors' officers and/or directors for recovery of the account balance, and Defendant asserted during the arbitration and prevailed on the theory that it performed services on behalf of the individual officers and/or directors of the Debtors, but not on behalf of the Debtors."

Each of the new allegations in the FAC relates back to these above-quoted allegations contained in the Initial Complaint. Paragraphs 19-34 of the FAC are the only new allegations that were added to the FAC, all of which merely provide additional support for the allegations contained in the Initial Complaint that Defendant knew and asserted that the services it performed were for Playlist's individual directors and officers, and not for Playlist. For example, ¶ 19 of the FAC alleges, "Plaintiff is informed and believes, and based thereon alleges, that the Transfer was made to Defendant in payment of legal services rendered by Defendant, between April 2010 and August 2010, to Playlist's individual directors and officers, Paul Gardi, Robert Zangrillo, Robert Pittman, and John Sykes, in their individual capacities as directors and officers of Playlist." This

allegation unquestionably relates back to ¶¶ 34, 35, 40 and 41 of the Initial Complaint. Likewise, each and every new allegation in the FAC, listed below, relates to the services performed by Defendant on behalf of Playlist's individual directors and officers, *i.e.* the same conduct, transaction, or occurrence alleged in ¶¶ 34, 35, 40 and 41 of the Initial Complaint:

> 20. Plaintiff is informed and believes, and based thereon alleges, that Defendant used the names "Playlist" and "Project Playlist" interchangeably.
>
> 21. Plaintiff is informed and believes, and based thereon alleges, that Defendant consistently referred to its client as the "individual board members" of Playlist, and not Playlist itself, in various written communications, including invoices generated by Defendant dated May 21, 2000 (REVISED August 5, 2010), June 11, 2010, July 14, 2010 (REVISED August 5, 2010), and September 16, 2010.
>
> 22. Plaintiff is informed and believes, and based thereon alleges, that Defendant revised its invoices in August of 2010 for the specific purpose of allotting certain services to Playlist's individual board members.
>
> 23. Plaintiff is informed and believes, and based thereon alleges, that Defendant admitted in writing on July 21, 2011, that the advice provided by Defendant was to the "board of directors for Playlist," and not Playlist, itself. Specifically, Defendant asserted in a Memorandum to "Project Playlist Board of Directors" from Defendant, regarding "Subject of Consultancy" that "This memorandum shall summarize Quinn Emanuel Urquhart & Sullivan LLP's (the "Firm") retention and advice provided to the board of directors for Project Playlist."
>
> 24. Plaintiff is informed and believes, and based thereon alleges, that Defendant admitted in writing on November 16, 2011 to its knowledge of Playlist's insolvency. Specifically, Brian Timmons, a partner of Defendant, wrote in an email to Paul Gardi, dated November 16, 2011, "The purpose of our engagement was to assess the potential legal exposure of the individual board members during the spring and summer of 2010 and to develop some strategies to help them avoid potential exposure amidst the company's legal challenges at the time and **imminent descent into insolvency**" (emphasis added).
>
> 25. Plaintiff is informed and believes, and based thereon alleges, that Defendant admitted in writing on November 16, 2011, that the purpose of Defendant's engagement was to perform legal services for the individual board members of Playlist. Specifically, Brian Timmons, a partner of Defendant, wrote in an email to Paul Gardi, dated November 16, 2011, "The purpose of our engagement was to assess the potential legal exposure **of the individual board members** during the spring and summer of 2010 **and to develop**

**some strategies to help them avoid potential exposure** amidst the company's legal challenges at the time and imminent descent into insolvency" (emphasis added).

26.  Plaintiff is informed and believes, and based thereon alleges, that Defendant admitted in writing on November 16, 2011, that the individual board members of Playlist were Defendant's clients, and not Playlist.  Specifically, Brian Timmons, a partner of Defendant, wrote in an email to Paul Gardi, dated November 16, 2011, "**You and your fellow board members were our clients – not Project Playlist, Inc**" (emphasis added).

27.  Plaintiff is informed and believes, and based thereon alleges, that Defendant admitted in writing on November 29, 2011, that the services Defendant provided were not for Playlist.  Specifically, Brian Timmons, a partner of Defendant, wrote in an email to Paul Gardi, dated November 29, 2011, "**I don't know how you could have possibly believed the services being provided were for the company.  From the very first discussion, the stated purpose of the engagement was to assess the potential for personal liability.** The fact that the purpose of the engagement was to address the potential personal liability and obligations of the directors was also obvious given the nature of the services we were rendering..." (emphasis added).

28.  Plaintiff is informed and believes, and based thereon alleges, that Defendant admitted in writing on November 29, 2011, that Playlist was not the intended beneficiary of Defendant's services, which were paid by the Transfer.  Specifically, Brian Timmons, a partner of Defendant, wrote in an email to Paul Gardi, dated November 29, 2011, "**the assertion that the company (and not you as an individual director) was the intended beneficiary of our services simply won't stack up against the weight of evidence to the contrary**" (emphasis added).

29.  Plaintiff is informed and believes, and based thereon alleges, that after the Petition Date, Defendant pursued collection of its remaining unpaid fees and costs against the individual directors and officers of Playlist – Paul Gardi, Robert Zangrillo, Robert Pittman, and John Sykes – in their individual capacities.

30.  Plaintiff is informed and believes, and based thereon alleges, that Defendant did not file a proof of claim against either of the Debtors.

31.  Plaintiff is informed and believes, and based thereon alleges, that Defendant's collection efforts against the individual directors and officers of Playlist included arbitration against the individual directors and officers of Playlist.

32.  Plaintiff is informed and believes, and based thereon alleges, that Defendant filed an arbitration proceeding seeking payment of its remaining unpaid fees and costs against only the individual directors and officers of Playlist, and not against either of the Debtors.

33.   Plaintiff is informed and believes, and based thereon alleges, that Defendant prevailed in its arbitration proceeding against the individual directors and officers of Playlist, based on Defendant's argument that payment for the services Defendant performed were the responsibility of Playlist's individual directors and officers, and not the responsibility of Playlist.

34.   Plaintiff is informed and believes, and based thereon alleges, that on June 7, 2013, Defendant sent a "reservation of rights" letter to Paul Gardi, Robert Zangrillo, Robert Pittman, and John Sykes – the individual officers and directors of Playlist – stating that if Plaintiff prevails in this adversary proceeding, "we hereby reserve our rights to seek that amount [$50,000] from each of you **in your individual capacities**, consistent with the decision of the arbitration panel, **in satisfaction of the balance due on your account**."

Based on the foregoing, the Committee has demonstrated that each new allegation in the FAC "arises from the same conduct, transaction, or occurrence as the original claim" – an analysis that Defendant clearly attempted to avoid because its argument does not withstand scrutiny.

### III.  CASE LAW FAVORS RELATION BACK

Defendant argues incorrectly that "leave to amend is inappropriate here because the statute of limitations has now expired, rendering any amendment futile." (Opposition at 11, ln. 22-23.) If Defendant's argument is accepted, then leave to amend can *never* be granted if an amended complaint would be filed after the expiration of the statute of limitations. Defendant is wrong, as demonstrated by many of the cases that Defendant cites. Defendant fails to cite a single case in which leave to amend was denied *as futile* because the statute of limitations had expired. Indeed, the case that Defendant cites directly after this assertion, *Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010), does not even discuss whether the relevant statute of limitations had expired, and the *Gordon* case does not involve any facts remotely similar to the facts at issue in this case. The plaintiff in *Gordon* was a police officer who alleged that the defendant, the City of Oakland, violated the minimum wage provisions of the Fair Labor Standards Act. *Gordon*, 627 F.3d at 1093. As such, *Gordon* does nothing to support Defendant's argument.

Defendant cites just one example of a case in which the statute of limitations had *not* expired at the time that leave to amend was granted, *i.e.*, *Valley Media v. Borders (In*

*re Valley Media)*, 288 B.R. 189 (Bankr. D. Del. 2003). (*See* Opposition at 11, ln. 21-23). On the other hand, in one of the many unpublished cases[5] cited by Defendant, *Crescent Res. Litig. Trust v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, 55 Bankr. Ct. Dec. 285 (Bankr. W.D. Tex. Jan. 23, 2012), the court granted the plaintiff leave to amend its complaint after the two-year statute of limitations expired in that case (see attached appendix).

It is further important to note that, in *In re SCI Real Estate Investments, LLC* ("*SCI*"), another unpublished case cited by the Defendant multiple times in its briefs (*see, e.g.* Opposition at 12, 14, 15), the Honorable Peter Carroll rejected the "no relation back" argument raised by certain defendants – an argument nearly identical to Defendant's argument. (Request for Judicial Notice ("RJN") at Exh. A.) Rather, the court granted the defendants' motion to dismiss *with leave to amend* with respect to the initial complaint in *SCI*. (RJN at Exh. B.) Most recently, Judge Carroll denied the motion to dismiss the plaintiff's first amended complaint – which was filed nearly four months after the statute of limitations had expired. (RJN at Exh. C.)

Furthermore, the differences between the Initial Complaint filed in this case, and the complaints filed in *Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Ariz., Inc.)*, 275 B.R. 357 (Bankr. D. Ariz. 2002) and *Valley Media v. Borders (In re Valley Media)*, 288 B.R. 189 (Bankr. D. Del. 2003) are, indeed, significant. Defendant argues incorrectly that the difference between the "rough estimate of the total amount of preferential transfers" in *Valley Media* and the facts included in the Committee's Initial Complaint in this case (*e.g.,* the amount of the Transfer, the date of the Transfer, and the purpose for the payment) is "a distinction without merit." (Opposition at 9, ln. 20-21.) A "rough estimate of the total amount of the transfers" simply is not tantamount to setting forth details specified in the Initial Complaint – the amount of the Transfer ($50,000), the number of transfers within the preference period (one), the recipient of the Transfer

---

[5] Defendant failed to comply with Local Bankr. R. 9013-2(b), which requires that unpublished cases be filed with the Court. Any unpublished cases cited by Defendant that are discussed herein are attached.

(Defendant), the date of the Transfer (August 4, 2010), and the purpose for which the Transfer was made (payment of legal services rendered by Defendant to Playlist's individual directors).[6]

According to the court in *Cellular Express*, "It's **only** where there are absolutely no adequately identified transactions in the original complaint that relation back should be denied, because the initial complaint does not suffice as a complaint." *Cellular Express*, 275 B.R. at 364 (emphasis added).  Defendant obviously has a dramatically different view of what "absolutely no adequately identified transactions" means in this context.[7]  In the Initial Complaint, the Committee identified the Transfer, the recipient, the date, the amount, the number of transfers (Initial Complaint, Exh. A.), the purpose for the Transfer, *i.e.* to pay a debt for which the Debtors' directors and officers were liable (*Id.* at ¶¶ 34, 40), and the debt which was paid by the Transfer, *i.e.* for services performed by Defendant (*Id.* at ¶¶ 35, 41).  Furthermore, the *Cellular Express* court's use of the qualifiers "only" and "absolutely" makes clear that denial of relation back is a severe remedy, only appropriate in very specific and absolute circumstances.  Refusal to allow the Committee's FAC to relate back to the Initial Complaint under Rule 15(c) is unwarranted for the reasons set forth above.

## IV.    DEFENDANT APPLIES THE INCORRECT STANDARD

Defendant's refusal to acknowledge the simple fact that the Motion is moot due to the filing of the FAC has caused an odd procedural dilemma.  Defendant's arguments with respect to failure to state a claim under Rule 12(b)(6) are solely with respect to the Initial Complaint, which is no longer operative.  Defendant has not argued for the dismissal of the FAC for failure to state a claim.  Rather, Defendant is seeking a finding by the Court that the Initial Complaint is *not a complaint at all*.  The only published cases that the Defendant cites[8] in support of this relief are *Birdsell v. U.S. West Newvector Group, Inc.*

---

[6]  As the Defendant is a law firm, there is no mystery as to what services were performed.
[7]  Defendant strains the bounds of credibility in arguing that the Initial Complaint did not provide "any information describing the nature of the transfer or whether the transfer was in money or property." (Opposition at 11, ln. 1-2.)
[8]  Although Defendant also cites *Grand Promenade v. Twersky (In re Twersky)*, 190 B.R. 903,

*(In re Cellular Express of Ariz., Inc.)*, 275 B.R. 357 (Bankr. D. Ariz. 2002) and *Gschwend v. Markus (In re Markus)*, 268 B.R. 556 (B.A.P. 9th Cir. 2001). According to these cases, the only relevant analysis is "whether the original complaint was adequate to constitute a complaint under *Rule 8*." *Cellular Express*, 275 B.R. at 363 (italics in original). The "dispositive question" is whether the timely-filed document or pleading put the defendant on notice. *Markus*, 313 F.3d at 1150. Thus, the relevant analysis set forth in both *Cellular Express* and *Markus* is whether the notice pleading standard of Rule 8 has been satisfied.

Therefore, Defendant has applied the incorrect legal standard in its Opposition. For example, Defendant argues, "The Initial Complaint Fails to Satisfy the Pleading Requirements of Rule 8." (Opposition at 8, ln. 19-20.) Defendant then jumps to the argument that the Initial Complaint fails to state claims for preferential and fraudulent transfer. (*Id.* at ln. 21.) Failure to state a claim under Rule 12(b)(6) and failure to satisfy the notice-pleading standard under Rule 8 are not one and the same, however, Defendant continually blurs the lines between the two concepts. Also, the Committee has already addressed the issue of how the Initial Complaint sufficiently states the Committee's claims in its Supplemental Brief, filed on September 18, 2013 [Doc. 18]. No further discussion of whether dismissal for failure to state a claim is necessary, because this is the not the correct standard for the drastic relief that Defendant seeks.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

907 (Bankr. C.D. Cal. 1996) and *In re Marino*, 37 F.3d 1354, 1357 (9th Cir. 1994), in its Opposition (Opposition at 16, ln. 4-7) those cases are inapposite. In *Grand Promenade*, the plaintiff filed an untimely nondischargeability complaint, but contended that its motion to reject an executory contract should be accepted by the court as a motion to extend the bar date. In *Marino*, the creditor's inexperienced counsel filed an opposition to a sale, but attempted to argue that the creditor had intended to file a nondischargeability complaint. Thus, the courts' denial of relation back in these cases is not surprising.

**V.    CONCLUSION**

For the foregoing reasons, the Court should deny the Motion as moot, and deny Defendant's request to dismiss the FAC.

Dated: October 9, 2013

RUTAN & TUCKER, LLP
ROGER F. FRIEDMAN
CAROLINE R. DJANG

By: /s/ Caroline R. Djang
Caroline R. Djang
Attorneys for Official Committee of Unsecured Creditors of Project Playlist, Inc. and Playlist, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
611 Anton Blvd., Ste. 1400, Costa Mesa, CA  92626.

A true and correct copy of the foregoing document entitled (*specify*):  **PLAINTIFF'S REPLY TO QUINN EMANUEL'S OPPOSITION TO SUPPLEMENTAL BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 9, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Caroline Djang cdjang@rutan.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Eric D Winston ericwinston@quinnemanuel.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 9, 2013, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Thomas B. Donovan
United States Bankruptcy Court
255 E. Temple Street, Suite 1352
Los Angeles, CA  90012

Eric D. Winston
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa St., 10th Flr.
Los Angeles, CA  90017

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 9, 2013 | Cecilia Solórzano | */s/ Cecilia Solórzano* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*   **F 9013-3.1.PROOF.SERVICE**